**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**ROSA JANE MCKELLAR**                                                                  **PLAINTIFF**

VS.                                          CASE NO. 3:15CV00360 PSH

**CAROLYN W. COLVIN, Acting Commissioner,
    Social Security Administration**                                          **DEFENDANT**

**ORDER**

Plaintiff Rosa Jane McKellar ("McKellar"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") failed to properly develop the record and failed to consider her impaired intellectual functioning and whether she met Listing 12.05C. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on July 24, 2014. (Tr. 59-80). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision. 42 U.S.C. § 405(g). The relevant period for disability purposes is from the amended onset date of December 4, 2012, through August 28, 2014, the date on which the ALJ issued his decision.

At the administrative hearing, McKellar testified she was 46 years old, weighed 224 pounds, and had a seventh grade education in special education classes before leaving school due to her pregnancy. She was married, but separated, and has five children. She indicated she lived with her

1

sister and cared for three dogs. She possessed a driver's license but did not own a car. She stated she has arthritis in both knees, significant hip pain, and anxiety and panic attacks. She uses a cane, which was prescribed for her, and cannot run, jump, lift, carry, push, or pull, according to McKellar. She is able to tend to daily hygiene needs, although she said she could not shower and instead took baths. She indicated she smokes a half a pack of cigarettes daily. A vocational expert testified. When asked to assume a worker of McKellar's age and educational level, with the ability to perform light work with numerous other limitations[1], the expert identified the jobs of silver wrapper and assembler as examples of work which such a person could perform. When the hypothetical question was altered to assume the worker could only perform sedentary work, the expert testified such a person could perform the jobs of jewelry preparer and document preparer. (Tr. 59-80).

**Failure to Properly Develop the Record:** McKellar faults the ALJ for failing to consider if she met Listing 12.05C for intellectual disability. She argues that the record shows the possibility of satisfying this Listing and the ALJ should have explored this possibility. In particular, she urges the ALJ should have considered the 2009 findings of Dr. Spellmann[2] ("Spellmann"), who conducted a mental diagnostic evaluation and intellectual assessment. (Tr. 336-338). This failure by the ALJ necessitates a remand, according to McKellar. This argument is without merit, for the following

---

[1] The other limitations were: able to stoop or bend occasionally and unable to crouch; able to perform work where interpersonal contact is only incidental to the work performed; able to perform work where tasks would need to be learned and performed by rote, with few variables and requiring little judgment; and able to perform work where supervision would be simple, direct, and concrete. (Tr. 76).

[2] The ALJ gave no weight to Spellmann's 2009 findings, as they were given before the relevant period. The ALJ also gave no weight to the 2009 findings of Dr. Kumar, another consultative examiner, because his report was also given well before the relevant period. (Tr. 51).

reasons.

McKellar's application for disability benefits alleged she was disabled due to knee problems, lower back pain, and bad nerves. (Tr. 276). She did not allege disability due to intellectual impairments.

McKellar was represented by competent counsel at the administrative hearing. The record also shows McKellar had pursued an earlier effort for benefits, and she was also represented by counsel in that effort. (Transcript of earlier hearing found at 85-117). As in this case, McKellar did not allege disability in the earlier case due to intellectual impairment.

McKellar concedes that she "did not press her intellectual disability at the hearing." Docket entry no. 11, page 14. Thus, she urges error on the part of the ALJ in not developing the record on an issue she was not advancing. This is too great a burden to place on an ALJ when a plaintiff is represented by counsel. At the close of the hearing, the ALJ inquired of counsel if he intended to offer any additional evidence, and counsel responded no. In addition, McKellar and counsel were apprised at that time that the ALJ deemed the record adequate and the case ready for decision, stating, "I don't get the impression there are any medical records we don't have. I don't intend to send this lady out for any additional testing or evaluation so let's go ahead and close this hearing." (Tr. 78). The hearing concluded without objection.

While the parties agree that the ALJ has a duty to fully and fairly develop the record, even when the plaintiff is represented by counsel, we find no error in this instance. The 2009 report of Spellmann did not trigger an obligation on the ALJ to seek further evidence, particularly when McKellar was not arguing an intellectual impairment caused her to be disabled.

**Listing 12.05C for Mental Retardation:** McKellar contends the ALJ should have

considered whether she met Listing 12.05C. To meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh v. Barnhart*, 438 F.3d at 898 -899. *See also Cheatum v. Astrue*, 388 Fed. Appx. 574 (8th Cir. 2010) (the introductory language of Listing 12.05 requires a plaintiff to demonstrate she suffered deficits in adaptive functioning).

Even if Spellmann's findings were given some weight, McKellar did not show she met the requirements of the Listing. Spellmann tested McKellar, resulting in the following scores: verbal IQ of 73; performance IQ of 73; and full scale IQ of 70. (Tr. 337). As a result, McKellar falls within the numerical requirement to meet Listing 12.05C (IQ of 60-70). McKellar also satisfies the third requirement, as she has medically demonstrated osteoarthritis of her knees. (Tr. 532, 534) ("moderate" osteoarthritis in right knee, and "moderate to severe" osteoarthritis in left knee diagnosed by radiologist in March 2014). However, McKellar fails to satisfy the second prong of the Listing, as she does not show she had deficits in adaptive functioning that initially manifested themselves before the age of 22. Indeed, Spellmann's findings support the ALJ's conclusion in at least two critical ways. First, Spellmann did not diagnose McKellar as mentally retarded. Rather, he found her to have borderline intelligence. Second, and more important, Spellmann offered numerous findings on the effect of McKellar's mental impairments on her adaptive functioning. According to Spellmann, McKellar's mental impairments did not interfere with her day to day adaptive functioning, she could communicate and interact in a socially adequate manner, she could communicate intelligibly and effectively, she could cope with the cognitive demands of work like tasks, she could sustain concentration and persistence in completing tasks, she could complete tasks

within an acceptable timeframe, and she could manage funds without assistance. (Tr. 337-338).

The medical evidence during the relevant time period is consistent with Spellmann's general diagnosis and his findings on McKellar's adaptive functioning. For example, when McKellar was seen at Mid-South Health Systems at the outset of the relevant period, her intelligence was estimated to be "average to low-average." (Tr. 469). McKellar was later seen at Families, Inc., from January through June 2016. On eleven occasions, she was evaluated and diagnosed under a framework with five areas of concern. For example, one of the areas was Axis I, Clinical Disorders, where McKellar was consistently found to suffer from post-traumatic stress disorder. The second area, Axis II, is described as "Personality Disorders and Mental Retardation." On all eleven occasions there was "no diagnosis on Axis II" by the staff at Families, Inc. (Tr. 571, 575, 580, 583, 585, 593, 596, 599, 602, 603, & 606).

In summary, McKellar received no diagnosis of mental retardation, either before or during the relevant period. More importantly, she does not demonstrate adaptive functioning deficits to the point of mental retardation. There is no merit to the claim that she met Listing 12.05C. And, as previously addressed, the ALJ did not err in failing to develop the record to further consider this possibility.

The ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and McKellar's complaint is dismissed with prejudice.

IT IS SO ORDERED this 23rd day of May, 2016.

_____
UNITED STATES MAGISTRATE JUDGE